IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John Marcus Stevens, #282316,<br><br>                  Plaintiff,<br><br>         vs.<br><br>Spartanburg County Probation, Parole,<br>and Pardon Services; Kevin Rhodes;<br>and Susan Crocker,<br><br>               Defendants. | Civil Action No. 6:09-795-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        This matter is before the court on the defendants' motion for summary judgment (doc. 31). The plaintiff, a state prisoner who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights have been violated. The plaintiff's current incarceration is not related to this Section 1983 action.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

        The defendants filed a motion for summary judgment with accompanying affidavits on July 16, 2009. By order filed July 17, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response on August 11, 2009, and the defendants filed a reply on August 18, 2009.

**FACTS PRESENTED**

The plaintiff was indicted in October 2000 for stalking. He was subsequently indicted in February 2002 for criminal domestic violence of a high and aggravated nature. In March 2002, the plaintiff pleaded guilty to these charges and was sentenced by the state court to 10 years imprisonment, suspended upon the service of four years imprisonment, five years probation for the criminal domestic violence charge, and one year concurrent imprisonment for stalking. He was ordered to comply with standard conditions of probation of the Department of Probation, Parole, and Pardon Services ("the Department"), referred for anger management counseling, and placed on six months of intensive supervision with home detention. The plaintiff did not appeal his conviction or sentence.

In March 2004, the plaintiff satisfied his four-year sentence and began serving his five-year probation term. The Department provided the plaintiff with written notice during a June 23, 2005, probation report that he had violated the conditions of his probation in the following respects:

> **Condition 1:**
> Failing to give truthful reports to the agent by reporting that he has been residing at 701 East Main Street, Duncan, South Carolina, when, in fact, he has been living at 10 Poplar Street, Startex, South Carolina, as verified by Tamela Gibson's June 21, 2005, Affidavit.
>
> **Condition 2:**
> Failure to refrain from changing his residence without the consent of the agent, as verified by Tamela Gibson's June 21, 2005, Affidavit, in which she states the Defendant has been living with her at 10 Poplar Street, Startex, South Carolina, since mid-September, 2004, and not at his mother's address at 701 East Main Street, Duncan, South Carolina, as he has been reporting to the Department.
>
> **Condition 10:**
> Failing to follow the advice and instructions of the agent, as noted above, to have no contact with Tamela Gibson in any manner whatsoever on June 14, 2005; and he has failed to do so by

2

calling her and going to her house since that date, as verified by Affidavit.

In responding to the alleged violations, defendant probation agent Kevin Rhodes chose not to issue an arrest warrant or citation or otherwise pursue the violations in court and, instead, with the agreement of the plaintiff, imposed additional probation conditions and allowed the plaintiff to continue under supervision. This option was allowable pursuant to Department policy in effect at that time. Those conditions included (1) active Global Positioning Satellite ("GPS") Monitoring Program for six months, and (2) Intensive supervision for six months.

The plaintiff was also advised that "[h]e must follow all instructions as they relate to GPS Program." On June 23, 2005, the plaintiff signed the "Notice of Violation and Response" and certified as follows: "I have read, or have had read to me, the order and the conditions set out therein. I agree to comply with such conditions of the order identified above during the period of my supervision."

During an August 15, 2005, probation report, the State provided the plaintiff with written notice that he had again violated the conditions of his probation, this time in the following respects:

> **Condition 10:**
> Failure to follow the advice and instructions of the supervising agent, in that subject has failed to comply with the conditions of the GPS Monitoring Program as ordered on June 23, 2005, and as agreed to in writing and in person by the subject on June 23, 2005. Subject has failed to main GPS signal as verified in tracking scheduler. Subject was advised on June 23, 2005, by Assistant AIC Rhodes, TL Sprouse, and Agent Crocker of the Importance of maintaining tracking points. Subject was again counseled on July 6, 2005, by TL Sprouse and on August 2, 2005, by Assistant AIC Rhodes regarding the importance of maintaining tracking points. Subject has still failed to maintain tracking points while under GPS Monitoring.

In responding to the alleged violations, defendant probation agent Susan Crocker chose not to issue an arrest warrant or citation, or otherwise pursue the violations in

court and, instead, imposed specific written instructions regarding the GPS Monitoring Program and allowed the plaintiff to continue under supervision. Those instructions were as follows:

> Be advised that if you fail to obtain and maintain GPS tracking points daily, a warrant will be issued for your arrest; and the case will be presented in Circuit Court for disposition of the charges. Each time you leave a building, you must re-establish tracking points. You must also always use the window cradle for the PTU when in a vehicle.

On August 15, 2005, the plaintiff signed the "Notice of Violation and Response" and certified: "I have read, or have had read to me, the order and the conditions set out therein. I agree to comply with such conditions of the order identified above during the period of my supervision."

Finally, in a warrant issued August 21, 2005, the plaintiff was charged with violating the conditions of his probation in the following respects:

> By failing to comply with the terms of the Department's Global Positioning Satellite System [GPS] Monitoring Program, in that the Defendant committed the following violations: Exclusion Zone -- by entering a known exclusion zone on August 21, 2005, at 11:57:05, and by failing to follow the advice and instructions of the Agent.

The warrant did not include the previously substantiated allegations of probation violation giving rise to the agreement regarding GPS monitoring.

The probation violation hearing was subsequently convened in September 2005 in the Court of General Sessions for Spartanburg County. The plaintiff was present and was represented by attorney Karen M. Quimby of the Spartanburg County Public Defender's Office. The State was represented by defendant probation agents Kevin Rhodes and Susan Crocker. At the hearing, Agent Rhodes explained the procedural history of the case, including the plaintiff's two prior violation episodes and the Department's use of its Form 1182 (the Department's "Notice of Violation and Response") to address those violations. He explained

4

the plaintiff was before the court that day for violating the terms of the Department's GPS Monitoring Program, specifically for entering a known "exclusion zone" and for failing to follow the advice and instructions of his agent.  The plaintiff acknowledged he had voluntarily agreed to the terms of the GPS Monitoring Program but argued his violation of those terms could not serve as a probation violation because they were unconstitutionally imposed by the Department.  The plaintiff argued it was a violation of the South Carolina Constitution's doctrine of separation of powers for the Department to impose conditions of probation.  The court declined the plaintiff's request to dismiss the probation violation charges as a separation of powers violation and ordered a partial revocation of six months.  In an order issued September 2, 2005, the court found the plaintiff had violated his conditions of probation; ordered that his suspended sentence be revoked; and directed that he be required to serve six months of the original sentence, thereupon to be reinstated on probation.  The plaintiff subsequently appealed this order (Rhodes and Crocker affs.).

On June 4, 2007, the South Carolina Supreme Court reversed the partial revocation of the plaintiff's probation on the basis that the plaintiff's violation of an exclusion zone established by his GPS agreement with the Department could not be the basis for a probation violation.  *State v. Stevens*, 646 S.E.2d 870, 871-72 (S.C. 2007).  The Department argued that while revoking the plaintiff's probation for his violation of a non-judicially imposed term would have violated the separation of powers doctrine under the statute in effect when *State v. Archie*, 470 S.E.2d 380 (S.C. Ct. App. 1996) was decided, the amendment to S.C. Code Ann. § 24-21-430 in 1996 eliminated any such constitutional problem.[1]  The court noted,

---

[1]The amended version of the statute retained the language affirming the sentencing court's authority to "impose . . . and . . at any time modify the conditions of probation" but added these sentences: "To effectively supervise probationers, the [Department] director shall develop policies and procedures for imposing conditions of supervision on probationers.  These conditions may enhance but must not diminish court imposed conditions." S.C. Code Ann. § 24-21-430.

however, that the Department had in effect added conditions of probation to the plaintiff's sentence.  Specifically, the court found as follows:

> In this case . . . the sentencing court chose not to require the appellant to "submit to intensive surveillance"; [the Department] therefore could not unilaterally impose GPS monitoring on appellant as this method of supervision did not enhance a judicially-ordered condition of probation.  Nothing prevented [the Department] and the appellant from reaching an agreement whereby appellant would participate in the program.  While appellant's failure to abide by the "exclusion zone" was a breach of his agreement with [the Department], it was not a violation of the conditions of his probation.  Under these circumstances, the circuit court erred in revoking a portion of appellant's probation.

*Stevens,* 646 S.E.2d at 872.

After the plaintiff was released in accordance with the court's opinion, he was convicted on May 19, 2008, of criminal domestic violence high and aggravated and sentenced to two years.  At that time, he was remanded to the custody of the South Carolina Department of Corrections ("SCDC").  On October 9, 2008, he was convicted on a February 2008 charge of criminal domestic violence and sentenced to 30 months.  He has since been convicted twice of malicious damage to property.  The plaintiff is currently in the custody of the SCDC.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact

is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

*Immunities*

The plaintiff alleges that defendants Rhodes and Crocker wrongfully forced him to participate in the GPS program and, as a result of their prosecution of him on the probation violation, he was illegally forced to spend more time in jail.

The defendants first argue that, to the extent the plaintiff raises his claims against them in their individual capacities, they are entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

When the plaintiff was sentenced in 2002, the standard conditions of probation incorporated into his sentence by Judge Gordon Cooper provided that "I shall follow the advice and instructions of my Agent and I agree to comply with any further conditions imposed by the

Department or its Agents."  In accordance with the court-ordered standard conditions of probation, and in an effort to avoid revoking the plaintiff's probation, defendant Crocker allowed the plaintiff to submit to GPS monitoring in return for forgoing revocation proceedings for violations of the plaintiff's judicially imposed terms of probation. The plaintiff agreed to submit to GPS monitoring as a term of his probation.  When he failed to comply with the GPS monitoring, Agent Crocker moved to revoke his probation, not on the basis of the original offenses giving rise to the GPS agreement, but the violation of the GPS agreement itself, although the Department had documented activities by the plaintiff which would support revocation apart from the monitoring violations.  At all times Crocker and Rhodes acted as agents of the Department and in accordance with options in conformity with Department policy at that time.  While the South Carolina Supreme Court later determined that the circuit court erred in revoking his probation, the probation agents' conduct in revoking the plaintiffs' probation did not "violate clearly established rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.  The evidence before the court shows that the agents followed Department policy at the time based upon a plausible reading of the amended statute. Based upon the foregoing, the defendants are entitled to qualified immunity.

The defendants next argue that they are entitled to absolute prosecutorial immunity in this case.  This court agrees.  A prosecutor is absolutely immune from actions taken in the prosecutorial decision-making process in initiating or continuing a criminal prosecution.  *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997). As noted by the court in *Ray v. Pickett*, 734 F.2d 370 (8th Cir. 1984), "'[O]fficials whose special functions or constitutional status require complete protection from suit' are accorded absolute immunity."  *Id*. at 371 (quoting *Harlow*, 457 U.S. at 818).

The court in *Ray* noted:

> Both the Supreme Court and [the Eight Circuit] have expressly reserved judgment on the question of what immunity, if any, a probation or parole officer has in a damages action where a constitutional violation is made out by the allegations. *See Martinez v. California*, 444 U.S. 277, 285 n. 11 (1980); *DeShields v. United States Parole Commission*, 593 F.2d 354, 356 (8th Cir.1979); *Kelsey v. Minnesota*, 565 F.2d 503, 507 n. 4 (8th Cir.1977). In recent decisions, the Supreme Court has emphasized a "functional" approach to immunity law. *See Harlow,* 457 U.S. at 810. Thus, the scope of immunity accorded a particular official is not dependent upon his or her location within the government, but rather upon the special nature of the official's responsibilities. *See Butz v. Economou,* 438 U.S. 478, 511-12 (1978). *See also Nixon v. Fitzgerald*, 457 U.S. 731, 744-48 (1982). Under this approach, certain adjudicatory or prosecutorial functions of a probation officer may be entitled to absolute immunity, while other functions, more administrative, supervisory, or investigative in nature, may warrant only a qualified immunity. *See Harlow,* 457 U.S. at 811; *Briggs v. Goodwin*, 569 F.2d 10, 22-23 (D.C.Cir.1977) (prosecutorial immunity extends to some, but not all, official functions).

*Id.* at 372.

The court further stated:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

*Id.* at 374.

The court in *Ray* went on to find, under a functional approach, that the probation agent's conduct in simply submitting a parole violation report was neither adjudicatory or prosecutorial in nature. *Id.* Here, however, defendants Rhodes and Crocker prosecuted the plaintiff's probation revocation before the circuit court. Since their function was that of a prosecutor, pursuant to the "functional approach," both defendants would be entitled to absolute immunity in this case.

In addition to qualified immunity and absolute prosecutorial immunity, the defendants argue that they are entitled to absolute quasi-judicial immunity. The plaintiff alleges that in the prosecution of his probation revocation the defendants "took a bogus statement from someone and made me wear a bracelet. They say I violated the bracelet." In *Boyce v. County of Maricopa*, 144 Fed.Appx. 653, 654 (9th Cir. 2005), the court concluded that the probation officer defendants were entitled to absolute quasi-judicial immunity against damages claims. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994). Quasi-judicial immunity is also absolute. *See id.* The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of "'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts.'" *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir.1992) (quoting *Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989)).

The Honorable Henry M. Herlong, Jr., Senior United States District Judge, in *Knox v. Creech*, C.A. No. 0:08-3651-HMH, 2008 WL 4924783, *3 (D.S.C. 2008), held that a probation officer in his function of ensuring the prisoner/plaintiff complied with the conditions of his release was entitled to quasi-judicial immunity. The Honorable Henry F. Floyd, United States District Judge, reached the same conclusion in *Jackson v. Gable*, C.A. No. 0:05-2591-HFF-BM, 2006 WL 1487047, *5 (D.S.C. 2006) (holding that the probation officer, who participated in the plaintiff's revocation hearing before the circuit court, was entitled absolute immunity). In accordance with these rulings, both defendants Crocker and Rhodes are entitled to quasi-judicial immunity.

The plaintiffs further argue that to the extent the plaintiff is alleging damages resulting from statements made by the defendants in his revocation hearings, they are entitled

11

to witness immunity. Witnesses in criminal proceedings have absolute immunity in an action for damages brought under Section 1983. *Briscoe v. LaHue*, 460 U.S. 325, 326-45 (1983). This immunity was applied to probation agents testifying against a Section 1983 plaintiff by the Honorable Joseph F. Anderson, United States District Judge, in *Black v. Sheriff,* C.A. No. 9:06-2247-JFA-GCK, 2007 WL 1035003 (D.S.C. 2007). In *Black,* as in the instant case, the plaintiff had his revocation overturned. As in this case, the plaintiff alleged that as a result of his wrongful arrest and imprisonment he suffered a deprivation of the rights secured to him by the Fourth, Sixth, Eighth, and Fourteenth Amendments as well lost wages, mental anguish, loss of enjoyment of life, and undue grief. In addition to applying the immunity doctrines discussed above to bar the plaintiff's claim, the court noted that witness immunity would also apply to protect the probation officer defendant. *Id*. at *8. Likewise, the defendants here are entitled to witness immunity.

Lastly, the defendants argue that they are entitled to Eleventh Amendment immunity. At all times relevant to this action, the defendants were acting as employees of the State of South Carolina engaged in the performance of their official duties. To the extent that the defendants are sued in their official capacities, they are to be treated as the State of South Carolina and are not subject to suit. The United States Supreme Court noted that a suit against a state official in her official capacity should be treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Court stated that "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159 (1985)). A defendant in an official capacity action is entitled to the immunities that the governmental entity possesses.

Based upon the foregoing, the defendants are entitled to qualified immunity, prosecutorial immunity, quasi-judicial immunity, witness immunity, and Eleventh Amendment immunity.

***Excessive Force***

The plaintiff further contends that a probation agent "bent [him] backwards over the trunk of [his] car" and put his knee in the plaintiff's groin (pl. m.s.j. opp. at 2) at the time of his arrest. The plaintiff does not name the agent in either his complaint or his response to the motion for summary judgment.

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. *Id*. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that law enforcement officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. *See id*. at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court must also consider the extent of the injuries caused to the plaintiff. *See Jones v. Buchanan*, 325 F.3d 520, 530-31 (4th Cir.2003). The reasonableness of the officer's use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (recognizing that the police must often make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

The standard of "reasonableness" under the Fourth Amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation. *Scott v. United States*, 436 U.S. 128, 137-38 (1978). Furthermore, in the course of a lawful arrest, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell,* 207 F.3d 1253, 1257 (11th Cir. 2000); *see also Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir.1999) (holding that arrestee's claims "that her handcuffs were too tight and that an officer pushed her legs as she got into the police car" are "so insubstantial that [they] cannot as a matter of law support her claim" for use of excessive force). "'Punishment must mean something more than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged "push or shove" would entitle plaintiff to a trial.'" *Lee v. O'Malley*, 533 F.Supp.2d 548, 552 (D.Md. 2007) (quoting *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997)).

Here, as argued by the defendants, the plaintiff has failed to establish who allegedly used excessive force against him – and specifically whether it was even one of the named defendants, that the force was excessive, or that he has anything more than a *de minimis* injury. Conclusory allegations, without more, are insufficient to preclude the granting of a summary judgment motion. *Ross,* 759 F.2d at 365. Accordingly, the claim fails.

### State Court Claims

To the extent the plaintiff alleges state court claims against the defendants, the court should decline to exercise supplemental jurisdiction as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. § 1367(c).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 31) be granted.


s/William M. Catoe
United States Magistrate Judge

January 21, 2010

Greenville, South Carolina